■ DURSO SUPERMARKETS, INC., Appellant, v FLORENCE B. D'URSO, Trustee, as Assignee of FLORENCE B. D'URSO, Executrix of CAMILLO J. D'URSO, Deceased, Respondent. [596 NYS2d 827] —Order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered on or about February 25, 1992, which granted defendant's motion for summary judgment dismissing the complaint and denied plaintiff's cross-motion for summary judgment, as well as a declaration that its failure to make payment is not a default, is unanimously affirmed, with costs and disbursements.

The Key Foods supermarket chain, which was operated by Durso Supermarkets, Inc., was sold for $43.5 million by defendant Florence B. D'Urso, the founder's widow, to a company owned by plaintiff's current principal. A portion of the stock purchase was financed by means of an $8.2 million note secured by a mortgage on a number of parcels of real estate already owned by plaintiff, and the entire balance was due on September 1, 1991. As part of the same transaction, the parties entered into a 21-year lease with an option to buy in connection with certain of defendant's real property. It is undisputed that plaintiff did not meet its $8.2 million obligation on the due date. Accordingly, defendant served a timely seven-day notice to cure with an expiration date of September 11, 1991. When plaintiff did not cure, defendant advised plaintiff that pursuant to section 11.02 of the lease, the "undersigned * * * gives notice that said lease and the term thereby demised shall expire and terminate on the 17th day of September 1991". The only issue involved here is whether a default under the mortgage also constitutes a default under the lease, and, in that regard, the Supreme Court was unpersuaded by plaintiff's contention that the two instruments should be severed from each other. On appeal, we affirm.

Section 13.01 of the mortgage states that "[e]ach of the following events is an 'event of default:' * * * (e) any 'event of

default' under a certain lease between Mortgagee (as Landlord) and Mortgagor (as Tenant) demising four premises (other than the Mortgaged Premises) to Mortgagor, and made contemporaneously with the making of this Mortgage, if Landlord shall have given written notice of termination of that lease pursuant to Section 11.02 thereof." In the event of a default, section 13.02 authorizes the mortgagee to accelerate the debt since "the entire unpaid balance of the Indebtedness secured by this Mortgage, together with the accrued interest thereon, and all other sums secured by this Mortgage, shall become due and payable forthwith, or thereafter at the continuing option of Mortgagee, as fully and completely as if said aggregate sums were originally stipulated to be paid by such time, anything in the Note or herein to the contrary notwithstanding, and Mortgagee shall be entitled thereupon or thereafter without notice or demand to institute suit at law or in equity to enforce the rights of Mortgagee hereunder and/or under the Note." The relevant clauses of the lease provide that:

"Section 11.01. Events of Default. Each of the following shall be an 'Event of Default': * * *

(g) Any event of default under either of the two mortgages on Tenant's real property made by Tenant to Landlord contemporaneously with the making of this Lease to secure a debt of eight million two hundred thousand ($8,200,000) dollars owed * * * to Landlord * * *, if as a result of that default, the entire principal balance of that debt shall have become due and payable.

"Section 11.02. Termination on Default. If an Event of Default shall occur, Landlord, at any time thereafter, may at its option give written notice to Tenant stating that this Lease and the term hereby demised shall expire and terminate on the date specified in such notice (which shall be no earlier than three (3) days after the mailing of said notice), and upon the date specified in such notice, this lease and the term hereby demised, and all rights of the Tenant under this Lease shall expire and terminate as if that date were the date herein definitely fixed for the termination of the term of this Lease, and Tenant shall quit and surrender the Demised Premises but Tenant shall remain liable as hereinafter provided."

Plaintiff asserts that where, as herein, the maturity of the debt has occurred through the passage of time and the terms of the note, acceleration is a meaningless concept. Since acceleration contemplates the maturity of a debt prior to the

time that it would have become due in the absence of a default, the cross-default provision of the lease is inapplicable, plaintiff urges, as section 11.01 (g) requires that "if as a result of [a] default, the entire principle balance of that debt shall have become due and payable." Thus, plaintiff's position rests upon the premise that a default that takes place before the maturity date has, under the lease agreement, a different legal effect than one that results from the failure to pay off the outstanding obligation on September 1, 1991. However, the technical distinction that plaintiff advances is not supported by the language of the subject agreements themselves. The mortgage clearly mandates that plaintiff pay the $8.2 million due under the note on September 1, 1991, and section 13.01 (a) includes the failure to pay any part of the indebtedness within the definition of an "event of default." The lease contains a cross-default provision, section 11.01 (g), that unambiguously proclaims "[a]ny event of default" under the mortgage to be a default under the lease "if as a result of that default, the entire principal balance of that debt shall have become due and payable." Indeed, section 13.01 (e) of the mortgage has a parallel clause that states that any "event of default" under the lease is also an "event of default" under the mortgage.

Any reasonable interpretation of the lease entitles defendant to invoke, at her option, the remedies under the cross-default terms of that instrument whenever there is an "event of default" under the mortgage. Both instruments, the mortgage and the lease, unequivocally give defendant the choice of declaring the entire unpaid principal balance of the debt due and payable upon the happening of any "event of default." There is no dispute that plaintiff did not meet the September 1, 1991 due date. Since such lack of payment is an "event of default" that entitles defendant to exercise her option under the mortgage and the lease, the Supreme Court properly granted defendant's motion for summary judgment dismissing the complaint. It is established that "[w]hether or not a writing is ambiguous is a question of law to be resolved by the courts" (*W.W.W. Assocs. v Giancontieri*, 77 NY2d 157, 162). Notwithstanding plaintiff's attempt to create an ambiguity where none actually exists, the two agreements were correctly construed in conjunction with each other, and plaintiff's strained reasoning was appropriately rejected by the Supreme Court. We have considered plaintiff's remaining arguments and find them to be without merit. Concur—Sullivan, J. P., Milonas, Asch and Rubin, JJ.